# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICIA DELVILLAR,<br><br>                Plaintiff,<br><br>v.<br><br>TRANSDEV SERVICES, INC.,<br><br>                Defendant. | Case No.: 18-cv-1721-W (MDD)<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DOC. 16]** |

      Pending before the Court is Defendant Transdev Services, Inc.'s, motion for summary judgment or, in the alternative, summary adjudication. Plaintiff Alicia Del Villar opposes.

      The Court decides the matter on the papers submitted and without oral argument. See Civ. L.R. 7.1(d.1). For the following reasons, the Court **DENIES** the motion for summary judgment [Doc. 16].

//

//

1

# I. BACKGROUND[1]

In this lawsuit, Plaintiff Alicia Del Villar is suing her former employer, Defendant Transdev Services, Inc. ("Transdev"), for retaliation and wrongful termination. At the time of her termination, Del Villar was a bus driver and union shop steward. In June 2016, Transdev terminated her for allegedly failing to "immediately" report that her bus bumped a pedestrian, who darted in front of the bus just as it began to leave the bus stop. There is no dispute that Del Villar reported the incident within 1 minute of bumping the pedestrian.

Notwithstanding Transdev's absurd interpretation of "immediately," it now seeks summary-judgment for two reasons. First, it argues Del Villar's causes of action are preempted by federal law to the extent they require interpretation of the term "immediately" in the Collective Bargaining Agreement ("CBA") between Transdev and Del Villar's union. Second, Transdev contends Del Villar cannot establish that its "legitimate" reason for terminating was pretext for her Union activity. (*P&A* [Doc. 16-1] 1:5–6.) Because Del Villar's causes of action do not require the interpretation of the CBA, they are not preempted. Additionally, because there exists a disputed issue of fact regarding pretext, summary judgment is not appropriate.

## A. Del Villar's union activity.

Del Villar was employed as a bus driver for Transdev from approximately May 2004 until June 24, 2016, when she was terminated. (*Pl's Tab 1* ("Del Villar Decl.") [Doc. 23-2] ¶¶ 3, 4; *Lewis Decl.* [Doc. 17-2] ¶¶ 3, 4; *Def's Ex. B* [Doc. 17-2].) As a bus driver for Transdev, Del Villar was a member of Teamsters Local 683 (the "Union"), which had a CBA with Transdev. (*Lewis Decl.* ¶ 4; *Def's Ex. 29* [Doc. 17-2].)

---

[1] Page references to Defendant's exhibits are to three digit bates stamp at the bottom center of the page.

During her employment with Transdev, Del Villar was active in the Union. In 2013, she was elected as a Shop Steward and was on the run-cut committee. (*Del Villar Decl.* ¶¶ 5, 6; *Lewis Decl.* ¶¶ 4, 6.) As a run-cut committee member, Del Villar helped review Transdev's proposed changes to bus routes in order to ensure compliance with, among other things, mandated driver meal-time and rest breaks. (*Del Villar Decl.* ¶ 6.)

In approximately November 2015, Transdev proposed new bus routes. Del Villar believed the proposed routes for the South Bay failed to comply with California law and the CBA regarding driver meal and rest breaks, and in early 2016 she notified management. (*Del Villar Decl.* ¶¶ 6, 7, 9.) Although management fixed the problem for the Chula Vista routes, the revised proposed bus routes for South Bay continued to have the same problems. (*Id.* ¶¶ 8, 9.) Del Villar, therefore, again advised management about the problems. (*Id.*)

### B. Relevant Provisions of the CBA, and Transdev's Safety Policies and Procedures Manual.

Article 10 of the CBA between the Union and Transdev covers "Discipline and Discharge." (*Def's Ex. 29* at 149.) Relevant to this motion is subsection 10.3, "Serious Infraction (Examples)", which provides "examples of violations of Company policies and rules that are considered Serious Infractions and shall be just cause for immediate discharge…." (*Id* at 150.) Among the examples is the "[f]ailure to report a hazardous situation, accident or injury immediately to the dispatcher or supervisor." (*Id.* at 151.) Similarly, Transdev's 2015 Safety Policies and Procedures manual states, "[e]mployees that do not report an accident immediately will result in disciplinary action up to and including termination." (*Def's Ex. 28* [Doc. 17-2] at 131.)

### C. The June 16, 2016 Incident.

On June 16, 2016, Del Villar was picking up passengers at a bus stop near 54th Street and El Cajon Boulevard in San Diego. (*Del Villar Decl.* ¶ 10.) As she closed the

bus's doors and was in the initial moments of pulling away from the curb, a pedestrian jaywalking from across the street to catch the bus stepped in front of the driver's side of the bus. (*Id.*) Del Villar slammed on the breaks as the pedestrian continued to cross in front of the bus. (*Id.*) Del Villar then opened the doors, allowing the pedestrian to board the bus. (*Id.*) As the person boarded the bus, Del Villar scolded her for being reckless. (*Id.*) According to Del Villar, the passenger responded by denying that the bus struck her. (*Id.*[2])

Del Villar's bus is equipped with a number of cameras, one of which appears to be positioned high above Del Villar's seat. (*Lewis Decl.* ¶ 6.) From that angle, a bike rack mounted on the front of the bus appears to bump the pedestrian. (*Lewis Decl.* Ex. A.) Del Villar contends she did not believe the bus struck the pedestrian. (*Del Villar Decl.* ¶ 12.)

As Del Villar began to again pull-away from the curb, she noticed the passenger rubbing her shoulder. (*Del Villar Decl.* ¶ 11.) Worried that either the bus struck the passenger or that the passenger was going to make a false claim, Del Villar stopped the bus and reported the incident to dispatch. (*Id.*) Approximately one minute elapsed from the time the passenger appeared in front of the bus and Del Villar notified dispatch. (*Def's Ex. 23* [Doc. 17-1 at 083.)

### D. <u>Del Villar's Termination.</u>

On June 17, 2016, Del Villar met with Transdev's management to discuss and review the video of the incident from the bus's cameras. (*Def's Ex. 23* at 084.) Del Villar explained that she did not report the incident immediately because she believed

---

[2] Transdev disputes Del Villar's contention that she did not believe the bus bumped the pedestrian. But whether Del Villar believed the bus bumped the passenger is irrelevant to the issues raised in this motion. Moreover, even if Del Villar knew she bumped the passenger, there remains no dispute she contacted dispatch within 1 minute, which in most situations would satisfy an "immediate" reporting requirement.

there was no "incident" to report. (*Def's Ex. 25* [Doc. 17-1] at 090.) However, in the Operator Incident Report prepared shortly after the accident, she wrote: "I was scared because she stuck [sic] with the ramp of the bicycle." (*Def's Ex. 24* [Doc. 17-1] at 087.[3]) Regardless of whether Del Villar actually believed the bus bumped the pedestrian, Transdev's termination notice confirms she reported the incident within one minute. (*Def's Ex. 23* at 083.)

Nevertheless, after the meeting, Del Villar was placed on administrative leave for purportedly failing to "immediately" report the incident. (*See Def's Ex. 26* [Doc. 17-1].) On June 22, 2016, Del Villar met with the Regional HR Manager to discuss the incident again. (*Def's Ex. 23* at 084.) Although the incident was considered non-preventable and was reported within one minute, Transdev terminated Del Villar. (*See id.*) At the time, Transdev had not resolved the issues with driver meal and rest breaks that Del Villar had e-mailed them about on May 6, May 29 and June 12. (*Def's Ex. A* at 022–027, 030–031.)

Del Villar filed a complaint with the National Labor Relations Board claiming she was terminated for engaging in protected union activities. The NLRB found insufficient evidence and dismissed the claim. The dismissal was upheld on appeal.

Del Villar filed this lawsuit in state court on May 17, 2018. Transdev removed the case to this court and now seeks summary judgment or, in the alternative, summary adjudication.

## II. LEGAL STANDARD

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment

---

[3] In her deposition, Del Villar clarified that she wrote the report in a hurry and struggled to find the right words. (*Def's Ex. A* at 039; *Del Villar Decl.* ¶14.) She was trying to convey that she did not believe the passenger was hit by the bus, but when De Villar saw the passenger holding her arm she got scared that the passenger might have been hit after all. (*Id.*) English is not Del Villar's first language. (*Pl.'s Opp.* 5:24-25.)

5

as a matter of law. See Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. Id. at 322–23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159–60 (1970).

If the moving party meets this initial burden, the nonmoving party cannot avoid summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." In re Citric Acid Litig., 191 F.3d 1090, 1094 (9th Cir. 1999) (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995) (citing Anderson, 477 U.S. at 252) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient."). Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Ford Motor Credit Co. v. Daugherty, 279 Fed. Appx. 500, 501 (9th Cir. 2008) (citing Celotex, 477 U.S. at 324). Additionally, the court must view all inferences drawn

from the underlying facts in the light most favorable to the nonmoving party. See Matsushita, 475 U.S. at 587.

### III. DISCUSSION

Transdev raises two arguments in support of the request for summary judgment. First, it argues that Del Villar's claims are preempted by section 301(a) of the Labor Managing Relations Act. Second, Transdev contends that Del Villar cannot demonstrate that its legitimate reason for terminating her was a pretext.

#### A. Del Villar's claims are not preempted.

Section 301(a) of the Labor Managing Relations Act preempts state law claims if (1) the claim is based upon a collective bargaining agreement, or (2) the claim requires the court to interpret a collective bargaining agreement. *See* Ramirez v. Fox Television Station, Inc., 998 F.2d 743, 748 (9th Cir. 1993). Courts draw a line between referencing versus interpreting a collective bargaining agreement. Kobold v. Good Samaritan Reg'l Med. Ctr., 832 F.3d 1024, 1033 (9th Cir. 2016). Merely referring to or applying the terms of the agreement will not trigger preemption. Id.

Here, Del Villar is not alleging breach of the CBA. Instead, she is suing for wrongful termination and retaliation under California Labor Codes § 98.6 and § 1102.5.[4] (*Compl.* 3:23–25.) To prevail on these claims, Del Villar must succeed under the three-step burden shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Loggins v. Kaiser Permanente Internat., 151 Cal. App. 4th 1102, 1108–09 (2007). This requires her to first establish a prima-facia case of retaliation. See id. at 1109. If successful, the burden then shifts to Transdev to provide a legitimate,

---

[4] Del Villar's second cause of action for wrongful termination in violation of public policy is derivative of her retaliation claims. (*Compl.* ¶ 34). Therefore, if her retaliation claims fail, so does her claim for wrongful termination. See Schulthies v. AMTRAK, 650 F. Supp. 2d 994, 1003 (N.D. Cal. 2009).

7

nondiscriminatory reason for its decision to fire her.  See id.  If Transdev satisfies this burden, Del Villar must then prove Transdev's stated reason is a pretext.  See id.

In support of its preemption argument, Transdev contends that in order to establish pretext, Del Villar will likely challenge Transdev's contention that she failed to immediately report the incident.  According to Transdev, because this will require interpretation of the term "immediately" in section 10.3.l of the CBA, Del Villar's claims are preempted.

But in her opposition, Del Villar does not argue that she immediately reported the incident or that Transdev breached the CBA.  Rather, Del Villar seeks to establish pretext by relying on, among other things, evidence of Transdev's management's animosity to Del Villar based on her Union activity, the proximity of her Union activity to her termination, and Transdev's treatment of a "similarly situated" employee.  (*See Opp.* [Doc. 23] 10:3–18.)  Because Del Villar's claims do not require the interpretation of the CBA, her state-law claims are not preempted.

### B. Disputed issues of fact exist regarding pretext.

Under the McDonnell Douglas burden-shifting framework, an employer moving for summary judgment "has the initial burden to present admissible evidence showing either that one or more elements of plaintiff's prima facie case is lacking or that the adverse action was based upon legitimate, nondiscriminatory factors." Guyton v. Novo Nordisk, Inc., 151 F.Supp.3d 1057, 1076 (C.D. Cal. 2015) (quoting Serri v. Santa Clara Univ., 226 Cal.App.4th 830, 861 (2014) (internal quotation omitted)).

Transdev does not attack Del Villar's prima facie case, but instead argues it had a legitimate, nondiscriminatory basis for her termination.  (*P&A* 12:4–13:7.)  In her opposition, Del Villar does not argue that Transdev failed to meet its burden of identifying a legitimate reason for her termination.  Instead, Del Villar argues Transdev's proffered reason is a pretext for terminating her.

"'A plaintiff can prove pretext in two ways: (1) *indirectly,* by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) *directly,* by showing that unlawful discrimination more likely motivated the employer." Guyton, 151 F.Supp.3d at 1078 (quoting Noyes v. Kelly Servs., 488 F.3d 1163, 1170 (9th Cir. 2007)). The former requires the employee to "'demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence . . . and hence infer that the employer did not act for the . . . non-discriminatory reasons.'" Id. at 1079 (quoting Dep't of Fair Emp't & Hous. V. Lucent Techs., Inc., 642 F.3d 728, 746 (9th Cir. 2011) (citation)). "Where evidence of pretext is circumstantial, rather than direct, the plaintiff must produce 'specific' and 'substantial' facts to create a triable issue of pretext." Earl v. Nielsen Media Research, Inc., 658 F. 3d 1108, 1113 (9th Cir. 2011) (citing Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1222 (9th Cir. 1998)). However, this "standard is 'tempered' by our observation that a plaintiff's burden to raise a triable issue of pretext is 'hardly an onerous one.'" Id. (citing Noyes, 488 F.3d at 1170).

Del Villar seeks to demonstrate pretext with direct and indirect evidence indicating that Transdev's stated reason is unworthy of credence. First, Del Villar contends the proximity between her Union activity and termination is indirect evidence of pretext. "[P]roximity in time between the protected action and the allegedly retaliatory employment decision [i]s one [way] a jury logically could infer [that the plaintiff] was terminated in retaliation." Dawson v. Entek Intern., 630 F.3d 928, 937 (9th Cir. 2011) (brackets in original) (quoting Keyser v. Sacramento City Unified Sch. Dist., 265 F.3d 741, 751–52 (9th Cir.2001)).

Here, Del Villar's evidence establishes that in early 2016 she raised concerns that Transdev's proposed changes to the bus routes violated Wage Order 9, pertaining to driver meal period and rest breaks. Because she felt Transdev was ignoring her, on May

9

6, 2016, Del Villar sent an email to Transdev's management about the problems with the proposed bus routes. (*Def's Ex. A* at 022–024.) In response, Transdev's management asserted that Del Villar did not understand the CBA or the law because she "did not know enough English…." (*Id.* at 024.) Nevertheless, in or about May 29, 2016, Del Villar sent another e-mail to Transdev's management about the violations. (*Id.* at 026–027.) Then on June 12, 2016, Del Villar sent yet another email to Transdev's management regarding labor issues. (*Id.* at 030–031.) During her deposition, Del Villar also testified that the problems regarding Wage Order 9 were "never resolved." (*Id.* at 025.) Additionally, another declarant has stated that after Del Villar was terminated, the situation "got worse" to the extent Transdev created more routes that "required long hours with only one meal period." (*Pl's Tab 2* [Doc. 23-2] ¶ 10.) Based on this evidence, it is reasonable to infer that when Del Villar was terminated, she was in the middle of aggressively advocating for driver's rights under the CBA and California law.

In its reply, Transdev contends Del Villar's evidence is insufficient to defeat summary judgment because "temporal proximity alone" cannot establish pretext. (*Reply* [Doc. 25] 2:17–20.) As an initial matter, Transdev is wrong: "In some cases, temporal proximity can by itself constitute sufficient circumstantial evidence of retaliation for purposes of both the prima facie case and the showing of pretext." Dawson, 630 F.3d at 937 (citing Miller v. Fairchild Industries, Inc., 797 F.2d 727 (9th Cir. 1986) and Bell v. Clackamas Cnty., 341 F.3d 858 (9th Cir. 2003)). Given that Del Villar was terminated while in the midst of repeatedly complaining about Transdev's failure to comply with California labor law and the CBA, the Court finds Del Villar's temporal proximity evidence is compelling. Regardless, Del Villar's claim of pretext is not based solely on the temporal proximity of her termination and Union activity.

Transdev also attempts to minimize the significance of Del Villar's temporal proximity evidence by pointing out that she had been complaining "about non-compliant routes/run-cuts for over three years…." (*Reply* 2:14–17.) Presumably, Transdev believes this history demonstrates its tolerance for her Union activity because Transdev asserts it

10

is "fatal to Plaintiff's argument that the 'temporal proximity' between her last complaint and the termination is sufficient to establish pretext." (*Id.*) Although a jury may agree with Transdev's proposed inference, it is just as reasonable for a jury to find Transdev's management grew tired of Del Villar's constant complaints about labor issues every time it proposed new bus routes. Indeed, the later inference is consistent with additional evidence submitted by Del Villar.

In addition to the temporal proximity evidence, Del Villar contends that it was well known that Transdev's management disliked her because of her Union activity. In support of this claim, Del Villar has provided the declaration of a Transdev driver who, while in "management's office on some business," observed director Sergio Padilla begin cursing after seeing a "union flier he did not like." (*Pl's Tab 5* [Doc. 23-2] ¶ 8.) The driver also stated that Padilla said "he 'knew who was responsible, it was Alicia Del Villar.'" (*Id.*) These comments are consistent with the inference that after three years of aggressively pursuing driver rights, management may have grown tired of Del Villar's Union activity.[5]

Transdev responds that Padilla's comments are not evidence of pretext and cites Trop v. Sony Pictures Entertainment, Inc., 129 Cal.App.4th 1133 (2005), as support. In Trop, the plaintiff attempted to establish pregnancy discrimination based on management's negative statement about having children that was made during a casual conversation at a Christmas party. But the Court of Appeal held the statement was insufficient because there was no evidence management knew plaintiff was pregnant when she was fired. Id. at 1147, 1148–49. Thus, notwithstanding management's

---

[5] Del Villar has submitted two additional declarations of employees who contend management did not like Del Villar because of her Union activity. (*See Pl's Tab 3* [Doc. 23-2], *Tab 4* [Doc. 23-2].) Transdev's objection to the declarations on the basis that they lack foundation is sustained. Del Villar has failed to provide any basis for the opinions of the two employees.

11

comment, the decision could not have been based on plaintiff's pregnancy since management did not know she was pregnant.

In contrast to Trop, Padilla's comment was not made in a social setting, but in management's offices while the employee was there on business. Additionally, unlike Trop, there is no dispute that when Del Villar was terminated, management knew she was active in the Union advocating for drivers' rights.

Next, Del Villar also contends Transdev has treated similarly situated employees differently. In support of this argument, Del Villar attached the declaration of Loebardo Garcia, who was not terminated despite waiting several hours to report a safety violation. (*Pl's Tab 5* ¶ 8.) In reply, Transdev argues Garcia is not "similarly situated" because his safety violation involved driving over trolley tracks without stopping, not striking a pedestrian. (*Reply* 2:28–3:1.[6])

"[O]ther employees are similarly situated to the plaintiff when they 'have similar jobs and display similar conduct.'" Earl, 658 F.3d at 1114 (Vasquez v. Cnty. Of Los Angeles, 349 F.3d 634, 641 (9th Cir. 2003). "The employees need not be identical, but must be similar in material respects." Id. (citing Hawn v. Exec. Jet Mgmt., Inc., 615 F.3d 1151, 1157 (9th Cir. 2010). "Materiality depends on context and is a question of fact that 'cannot be mechanically resolved.'" Id. Applying these principles, the Ninth Circuit in Earl found employees were similarly situated because they had the same position and violated the same policies and procedures, despite violating them under different circumstances. Id. at 1114–16.

---

[6] Transdev also contends Garcia is not similarly situated because unlike Del Villar, he had not received previous warnings for failing to immediately report incidents. (*Reply* 3:2–4.) But as pointed out in her opposition, section 10.1 of the CBA provides that after 12 months, "a discipline shall become null and void." (*Def's Ex. 29* at 149.) Because Del Villar's previous warnings occurred more than 12 months before the June 2016 incident, under section 10.1 the warnings had no bearing (i.e., were irrelevant) on Transdev's discipline of Del Villar.

Here, Transdev is correct that Del Villar and Garcia's violations involved different underlying conduct. However, as in <u>Earl</u>, Del Villar and Garcia occupied the same position (i.e., bus drivers) and their conduct violated the same CBA provision, section 10.3.l. In fact, Garcia's violation was arguably more egregious to the extent he failed to report the incident for several hours, while Del Villar reported the incident within 1 minute.[7]

Although relevant, Del Villar's single instance of management's frustration with her Union activity and of its disparate treatment of one similarly situated employee would not be sufficient to defeat Transdev's motion. However, when combined with Del Villar's temporal proximity evidence, there is sufficient evidence to create a disputed issue of fact regarding pretext. Accordingly, Transdev is not entitled to summary judgment.

## IV. CONCLUSION & ORDER

For the foregoing reasons, the Court **DENIES** Transdev's motion for summary judgment [Doc. 16].

**IT IS SO ORDERED.**

Dated: December 20, 2019

Hon. Thomas J. Whelan
United States District Judge

---

[7] Del Villar has submitted additional declarations of employees who contend Del Villar was treated differently than other similarly situated employees. (*See Pl's Tab 4*, *Tab 5*.) Transdev's objection to the declarations on the basis that they lack foundation is again sustained. Del Villar cannot rely on the declarants' beliefs about the way management treated other employees in order to establish that she was treated differently than similarly situated employees.